IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATHANIEL J. RICHMOND, JR. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:26-CV-56-P |
| | § | |
| ADL AUTO SALES, LLC | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE REGARDING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH COUNTERCLAIMS**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Plaintiff Nathaniel J. Richmond, Jr. ("Richmond"), proceeding *pro se*, filed this action on

January 16, 2026, against Defendant ADL Auto Sales, LLC ("ADL Auto Sales"). Plaintiff's

claims arise out of his October 8, 2025, purchase of a 2018 Ford Escape from ADL Auto Sales.

(Plaintiff's Amended Complaint ("Pl.'s Am. Compl.") at 1.) As part of this motor vehicle

purchase, Richmond and ADL Auto Sales signed a "Buyer's Order" that stated Richmond was

purchasing a used 2018 Ford Escape from ADL Auto Sales LLC at a total cash sales price

(including vehicle sales price, sales tax, and other fees (which included $650 in GAP insurance)

of $19,001.93). (Defendant's Response to Plaintiff's Request for Injunctive Relief ("Def.'s Resp.

to Injunctive Relief") [doc. 28] at Exhibit ("Ex.") 2.) The Buyer's Order further indicated that the

total balance due after Plaintiff paid $1,400 in a cash down payment and $1,100 in a deferred down

1

payment (for a total down payment of $2,500) was $16,501.93. (*Id.*) There was also, *inter alia*, a "Motor Vehicle Retail Installment Contract and Security Agreement" ("Contract") that contained, *inter alia*, the "Truth-In-Lending Disclosure" and was signed ay ADL Auto Sales. (*Id.* at Ex. 3.) While Richmond did not sign at the end of this Contract, Richmond did sign the sections of the Contract titled "Insurance Disclosures and Debt Cancellation Agreement" and "Signatures." (*Id.*) Thereafter, on February 2, 2026, Plaintiff filed a Motion for Preliminary Injunction [doc. 13] seeking "emergency injunctive relief to prohibit Defendant . . . from repossessing his motor vehicle."[1] (Plaintiff's Motion for Preliminary Injunction at 1.)

In his Amended Complaint [doc. 36] filed on March 2, 2026, Plaintiff alleges claims against Defendant for the following: (1) violations of the Truth in Lending Act ("TILA"); (2) violations of the Fair Debt Collection Practices Act ("FDCPA"); (3) violations of the Texas Deceptive Trade Practices Act; (4) identity theft and fraud; (5) breach of peace and unlawful repossession under Texas Business and Commerce Code § 9.609(b)(2); and (6) unjust enrichment. (*Id.* at 4-6.) Defendant also filed a counterclaim [doc. 29] against Plaintiff for breach of contract.[2]

Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint With Counterclaims ("Motion to Dismiss") [doc. 39], on March 11, 2026. In the motion, Defendant argues that all

---

[1] The Court notes that to obtain a preliminary injunction, Plaintiff must satisfy the following four requirements: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the injunction will not disserve the public interest. *See Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001); *Champion Nat'l Sec., Inc. v. A&A Sec. Grp., LLC*, No. 3:21-CV-00528-M, 2021 WL 1400979, at *3 (N.D. Tex. Apr. 13, 2021). The party seeking injunctive relief must clearly carry the burden of persuasion on all four prerequisites to prevail. *See Champion Nat'l Sec., Inc.*, 2021 WL 1400979, at *3 ("Preliminary injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.").

[2] Both parties assert that the basis for the Court's subject-matter jurisdiction is federal question jurisdiction. (*See* Pl.'s Am. Compl. at 2; Defendant's Counterclaim at 1; *see also* Fed. R. Civ. P. §§ 1331, 1332.)

claims against it should be dismissed pursuant to Rule 12(b)(6). (Defendant's Motion to Dismiss

("Def.'s Mot. to Dismiss") at 1.)

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

("Rule") 12(b)(6) is generally viewed with disfavor. *See Lowrey v. Texas A&M Univ. Sys.*, 117

F.3d 242, 247 (5th Cir. 1997). To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Reliable*

*Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal quotation marks and

citations omitted). A claim satisfies the plausibility test "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While a

complaint need not contain detailed factual allegations, it must set forth "more than labels and

conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at

545. The "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Id.* When the allegations of the pleading do not allow the court to infer more than the mere

possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *See Iqbal*,

556 U.S. at 679.

When ruling on a 12(b)(6) motion to dismiss, the court must accept all well-pled facts in

the complaint as true and view them in the light most favorable to the plaintiff. *See Bustos v.*

*Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th

Cir. 2009)). While well-pled facts of a complaint are to be accepted as true, legal conclusions are

not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Additionally, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  Finally, although "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers," *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981), the pleadings must still show specific, well-pled facts, "not mere conclusory allegations" to avoid dismissal, *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

In rendering a decision on a 12(b)(6) motion, the court generally cannot look beyond the pleadings.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Additionally, the court may consider "'[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (alterations in original)).

### III.    LEGAL ANALYSIS

#### A.    TILA[3]

Plaintiff, in his Amended Complaint, alleges that Defendant violated 15 U.S.C. § 1638 of the TILA by "failing to accurately disclose the Annual Percentage Rate (APR) and by failing to

---

[3] The Court notes that Plaintiff "disputes the authenticity and authorization of signatures on material portions of the [C]ontract at issue." (Pl.'s Resp. at 3.)  However, as a violation of the TILA occurs when a new credit transaction is consummated without the requisite disclosures being made, Plaintiff can only state a TILA claim at the time he has become contractually obligated on a credit transaction.  *See* 12 C.F.R. § 226.2(a)(13); *Robinson v. RiverHills Bank*, No. 3:21-CV-195-DPJ-LGI, 2022 WL 4234269, at *4 (S.D. Miss. Aug. 16, 2022) (stating that, if Plaintiffs never signed the Loan Agreement, then "they would have no TILA claim related to the loan because it was never consummated under Regulation Z[, TILA's implementing regulations]").  In other words, for Plaintiff to state a claim under the TILA, he is, in essence, admitting that he signed the Contract and was contractually obligated on the credit transaction related to his purchase of the automobile in question.  If not, then the new credit transaction was not consummated and Defendant had no duty to make the TILA disclosures to Plaintiff.  *See Myles v. Gen. Motors Acceptance Corp.*, No. C.A. 97-2030, 1998 WL 158483, at *3 (E.D. La. Apr. 1, 1998).

separately disclose and obtain affirmative written consent for [Guaranteed Asset Protection ("GAP") Insurance]." (Pl.'s Am. Compl. at 4.) As to the APR, Plaintiff states that the "Contract lists APR as 0.000%, yet includes $1,750.00[4] in financed charges, making the APR mathematically impossible and therefore fraudulent. (*Id*. at 3 (footnote added).) Plaintiff claims that "[t]hese violations constitute strict liability under 15 U.S.C. §1640, requiring no proof of intent or willfulness." (*Id*. at 4.) As to the GAP insurance, Plaintiff alleges that the "Contract fails to separately disclose GAP insurance costs and fails to obtain Plaintiff's affirmative written consent before including GAP coverage in the [C]ontract, violating 15 U.S.C. §1638(h)." (*Id*.)

The section titled "Truth-In-Lending Disclosure" in the Contract states:

**Truth-In-Lending Disclosure**

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 2500.00 |
|---|---|---|---|---|
| 0.000 % | $ N/A | $ 16501.93 | $ 17601.93 | $ 19001.93 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 1 | $ 1100.00 | 10/22/25 |
| 29 | $ 550.07 | Monthly, Beginning 11/07/25 |
| 1 Final | $ 549.90 | 4/7/2028 |

Security. You are giving us a security interest in the Property purchased.
Late Charge. If all or any portion of a payment is not paid within 15 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.
Prepayment. If you pay off all or part of this Contract early, you will not have to pay a penalty.
Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date and prepayment refunds.

(Def.'s Resp. to Injunctive Relief at Ex. 3.) Moreover, the portion of the Contract relating to the, *inter alia*, GAP insurance disclosures[5] states:

---

[4] It is unclear where Plaintiff gets this figure.

[5] The GAP insurance amount of $650.00 is also set forth in the section of the Contract titled "Itemization of Amount Financed" as "Other insurance paid to insurance company WARRANTY SOLUTIONS for GAP." (Def.'s Response to Injunctive Relief at Ex. 3.)

**Insurance Disclosures and Debt Cancellation Agreement**

50 02/17/26   Page 17 of 33   PageID 179

**Optional Credit Insurance Coverages and Debt Cancellation Agreement.** Credit life, credit disability (accident and health), involuntary unemployment, GAP insurance and Debt Cancellation Agreement are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premiums or charges. If you want such insurance or Debt Cancellation Agreement, we will obtain it for you (if you qualify for coverage). We are quoting below only the insurance coverages and Debt Cancellation Agreement you have chosen to purchase.

**Credit Life Insurance**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A _____   Term _____

Insured ___ _____

**Credit Disability Insurance**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A _____   Term _____

Insured _____

**GAP Insurance***

☒ Requested   ☐ None

Premium $ 650.00 _____   Term _____

**Debt Cancellation Agreement****

☐ Requested   ☒ None

Charge  $ N/A _____   Term _____

**Involuntary Unemployment Insurance**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A _____   Term N/A _____

Insured N/A _____

Agent/Policy Fee: $ N/A _____

\* If the Vehicle is determined to be a total loss, GAP Insurance will pay the difference between the proceeds of your basic collision policy and the amount you owe on the Vehicle, minus your deductible. See your insurance policy for specific terms and conditions. You can cancel this insurance without charge for 10 days from the date of this Contract.

\*\* WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. See your separate Debt Cancellation Agreement for specific terms and conditions. You can cancel the Debt Cancellation Agreement without charge for a period of 30 days from the date of this Contract or for the period stated in the Debt Cancellation Agreement, whichever period ends later.

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments.

(Contracts with a balloon payment.) Credit Life Insurance is for the scheduled term of this contract. Credit Disability Insurance covers the first ___ _____ payments and does not cover the last scheduled payment.

The premium rates are not fixed or approved by the Texas Insurance Commissioner for: 1) credit life and credit disability insurance with a term greater than 120 months, 2) GAP Insurance, and 3) credit involuntary unemployment insurance. A Debt Cancellation Agreement is not insurance and is regulated by the Office of Consumer Credit Commissioner.

**Your signature below means you want (only) the Insurance coverage(s) and Debt Cancellation Agreement protection quoted above for the stated additional charges.** If "None" is checked, you have declined the coverages and protections we offered.

_____ UCC1-309 _____
By: Nathaniel Richmond                          DOB

_____
By:                                              DOB

_____
By:                                              DOB

(*Id.*)

6

ADL Auto Sales, in its Motion to Dismiss, argues that it did not violate the TILA because "[t]he [C]ontract clearly states what Plaintiff was to pay, and it is also clear that no finance charges or interest apply." (Def.'s Mot. to Dismiss at 2.) In support, Defendant, *inter alia*, states:

Page 1 of the Buyer's Order sets forth the payment terms:

| | |
|---|---|
| Vehicle Sales Price | $16,990.00 |
| Sales Tax | $1061.88 |
| SUBTOTAL | $18051.88 |
| | |
| Title and Other Fees | $300.05 |
| GAP Insurance | $650.00 |
| Cash Sale Price | $19001.93 |
| Cash Down Payment | $1400.00 |
| Deferred Down Payment | $1100.00 |
| Total Balance Due | $16501.93 |

The charges were clearly stated, including the GAP Insurance charge.

Plaintiff alleges that the difference between the "total" payment amount of $17601.93 and $16501.93 proves that interest was charged. Wrong. The difference between $17601.93 and $16501.93 is $1100 (*i.e.*, the amount of the deferred down payment). The total down payment was $2500. Defendant permitted Plaintiff to pay $1400 of the down payment immediately and pay the remaining $1100 of the down payment later.

After Plaintiff paid the second part of the down payment, $16501.93 remained to be paid, as follows:

| | |
|---|---|
| 29 payments of $550.07 each | $15,952.03 |
| Final payment of $549.90 | $549.90 |
| TOTAL | $16501.93 |

As the Court can see, 0% interest was charges. And there was no finance charges. . . .

(*Id.* at 2-3.)

The TILA is meant "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and

credit card practices." 15 U.S.C. §1601(a); *see Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011). The TILA "requires creditors to make certain disclosures to borrowers at the time a loan is made." *Mason v. Freemont Inv. & Loan*, No. 3:17-cv-877-B-BN, 2017 WL 4512486, at *2 (N.D. Tex. July 26, 2017) (internal quotation marks and citations omitted); *see Haynes v. Am. Car-Mart, Inc.*, No. 5:24-CV-00067-RWS-JBB, 2024 WL 4729491, at *5 (E.D. Tex. Sept. 23, 2024). "To be successful on his TILA claim, [Plaintiff] must[, for purposes of a motion to dismiss, allege]: (1) that [Defendant] is a 'creditor' as defined by TILA, (2) that [Plaintiff] entered a 'consumer credit transaction' with [Defendant], and (3) that [Defendant] failed to provide the disclosures required by TILA." *Smith v. Classic Se. Tex., Inc.*, No. 1:18-CV-451, 2021 WL 9473250, at *4 (E.D. Tex. May 14, 2021) (citing 15 U.S.C. § 1638(a)). "A plaintiff must allege a defect in the lender's material disclosures—such as the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, the amount borrowed, the amount of regular monthly (or other periodic) payments, the amount of any balloon payment, a statement regarding variable-rate transactions, and any prepayment penalties." *Abor v. Planet Home Lending LLC*, No. 3:24-CV-2205-B-BW, 2025 WL 2945855, at *7 (N.D. Tex. Sept. 17, 2025) (internal quotation marks and citations omitted).

In this case, Plaintiff, in his Amended Complaint and Response to Defendant's Motion to Dismiss, takes issue with the TILA disclosures in the Contract regarding the following: (1) an APR of "0.000 %," (2) a finance charge listed as "N/A," and (3) the "Total of Payments" exceeds the "Amount Financed" even with an APR of 0 %. (*See* Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Resp.") at 2; Pl.'s Am. Compl. at 3 ("The Contract lists APR as 0000%, yet includes $1,750.00 in financed charges, making the APR mathematically impossible and therefore

fraudulent.").)  However, as shown in the Buyer's Order and Contract,[6] the total cash price of the

vehicle (including sales tax, all fees, and the $2500 total down payment) was $19,001.93.[7]  (Def.'s

Resp. to Injunctive Relief at Exs. 2 & 3.)  These documents further indicate that Plaintiff was

required to make a total down payment of $2,500, with $1,400 of the cash down payment due on

the day he purchased the vehicle and the remaining $1,100 of the cash down payment was due

October 22, 2025.[8]  (Id.)  As a result, as set forth in the TILA disclosures in the Contract, a total

of $16,501.93 was being financed at an APR of 0%, with $0 owed in finance charges.[9]  (Id.)  As

also noted in the TILA disclosures, the "Total of Payments" amount of $17,601.93 was greater

than the "Amount Financed" of $16,501.93 because the "Total of Payments" also included the

amount of the deferred down payment of $1,100, which is required by law.[10]  (Id.)  A careful

review of the information in Buyer's Order and Contract shows that the TILA disclosures in the

---

[6] The Court notes that, as Plaintiff referred to and attached the Buyer's Order and Contract to his original Complaint and Defendant also included such documents in its Motion to Dismiss, the Court may consider such documents in reviewing Defendant's Motion to Dismiss.  See Collins, 224 F.3d at 498-99.  The underlying result would be the same even if the Court just considered the Contract (and not the Buyer's Order).

[7] According to 15 U.S.C. § 1638(a)(7), "total sale price" is "the total of the cash price of the property or services, additional charges, and the finance charge." "'[T]otal sale price' shall include reference to the amount of the down payment."  15 U.S.C. § 1638(a)(8).

[8] "A 'down payment' is an amount paid to a seller to reduce the case price of goods . . . purchased in a credit sale transaction and may include a deferred portion of a down payment so long as that deferred portion is payable no later than the second regularly scheduled payment and is not subject to a finance charge." Houston v. Tex. Auto Save, LLC, No. SA-19-CA-1018-XR, 2020 WL 495573, at *3 (W.D. Tex. Jan. 30, 2020) (citing 12 C.F.R. § 226.2(18)).  In this case, according to the Contract, the deferred down payment was due on October 22, 2025, as the first payment. (Def.'s Resp. to Injunctive Relief at Ex. 3.)  As there was no finance charge, it was not subject to a finance charge. (Id.)

[9] The "amount financed" is defined to be the "amount of credit of which the consumer has actual use." See 15 U.S.C. § 1638(a)(2)(A).  "Finance charge" is defined as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).  "The finance charge does not include charges of a type payable in a comparable cash transaction." (Id.)

[10] See Houston, 2020 WL 495573, at *3 ("Under the Federal Reserve Board staff opinions, a creditor may have some discretion in choosing how to treat deferred down payments . . ., but nonetheless must ensure the sum of the Total of Payments equals the sum of the payments disclosed under the payment schedule."); see also Kulseth v. Univ. Auto Sales and Serv., LLC, No. 14-2194 (JJK), 2016 WL 8200519, at *3 (D. Minn. Feb. 16, 2016).

Contract are accurate. While Plaintiff attempts to argue otherwise, he fails to make any non-conclusory allegations in his Amended Complaint or any other filings showing how the above calculations are incorrect.

As to the GAP insurance, Plaintiff alleges that the "Contract fails to separately disclose GAP insurance costs and fails to obtain Plaintiff's affirmative written consent before including GAP coverage in the [C]ontract, violating 15 U.S.C. § 1638(h)." (Pl.'s Am. Compl. at 3.) In his Reply Brief to his Motion for Preliminary Injunction, Plaintiff also claims that the GAP insurance was pre-checked without written consent, there was no GAP insurance documentation, and the "Amount Financed" in the TILA disclosures includes "undisclosed GAP." (Plaintiff's Reply to Motion for Preliminary Injunction [doc. 30] at 2.)

However, a review of the Buyer's Order and the Contract shows that the premium cost of the GAP insurance in the amount of $650 is clearly stated as a separate fee or additional product in both documents. (*See* Def.'s Resp. to Injunctive Relief at Exs. 2 & 3.) In addition, Plaintiff *separately signed* the section of the Contract titled "Insurance Disclosures and Debt Cancellation Agreement," which specified that GAP insurance was "not required to obtain credit" and was being provided at an additional premium of $650. (*Id*. at Ex. 3.) Since the specific amount of the GAP premium and the fact that such premium was not required were both disclosed in writing in the Contract and Plaintiff separately signed an affirmative request for such GAP coverage, then the $650 premium for such insurance was properly excluded as a finance charge and properly included in the "Amount Financed" of the TILA disclosures. *See Smith*, 2021 WL 9473250, at *5 ("According to the regulations promulgated pursuant to TILA, the finance charge does not include voluntary debt cancellation charges [such as GAP insurance] if . . . [, *inter alia*,] [t]he debt cancellation or debt suspension agreement or coverage is not required by the creditor, and this fact

10

is disclosed in writing[.]") (citing 12 C.F.R. 226.4(d)) (emphasis omitted).[11]   Thus, Plaintiff's allegations relating to the GAP insurance are conclusory and unsupported.

Because ADL Auto Sales properly made the relevant TILA disclosures, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a claim under the TILA and such claims against Defendant should be **DISMISSED WITH PREJUDICE**.   As a result, the Court **RECOMMENDS** that Defendant's Motion to Dismiss on this claim be **GRANTED**.

### B.   FDCPA

Plaintiff, in his Amended Complaint, also alleges that Defendant violated 15 U.S.C. § 1692g(c) of the FDCPA by "failing to provide proper validation of the alleged debt within 30 days of Plaintiff's January 3, 2026 validation demand."  (Pl.'s Am. Compl. at 4.)  Plaintiff also claims that "Defendant further violated 15 U.S.C. §1692g [of the FDCPA] by continuing collection efforts (filing the present Counterclaim) after the validation deadline expired without providing the required validation."  (*Id*. at 5 (mistakes in original).)

Defendant, in its motion to dismiss, argues that Plaintiff's claims against it under the FDCPA should be dismissed because "Plaintiff does not contend that Defendant meets the definition of 'debt collector' under the [FDCPA]—i.e., a company that collects 'debts owed or due or asserted to be owed or due another.'"  (Def.'s Mot. to Dismiss at 5.)  Defendant claims that the FDCPA does not apply because "Defendant is a vehicle dealer attempting to collect its own debts."  (*Id*.)

---

[11] "Items such as GAP insurance must be[, as in this case,] . . . voluntary to be lawfully excluded from the finance charge.  *Munoz v. JLO Auto., Inc.*, No. 3:19-cv-01793 (MPS), 2020 WL 6607789, at *3 (D. Conn. Nov. 12, 2020).  *See also McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380 (7th Cir. 1996) ("[T]he GAP fee was properly included within the "Amount Financed" disclosure in the sales contract and excluded from the 'Finance Charge' disclosure").

"The FDCPA protects individuals from abusive debt collection practices by debt collectors." *Duhon v. US Bank Trust as Trustee for Citigroup Mortg. Loan Trust 2020-RP2*, No. 4:22-CV-1161, 2023 WL 9105683, at *3 (S.D. Tex. Apr. 11, 2023). To state a claim under the FDCPA, Plaintiffs must allege: (1) Plaintiffs have been the object of collection activities arising from a consumer debt; (2) Defendant is a debt collector defined by the FDCPA; and (3) Defendant has engaged in an act or omission prohibited by the FDCPA. *See Dennis v. Ocwen Loan Servicing LLC*, No. 3:16-CV-836-BH, 2017 WL 4682143, at *10 (N.D. Tex. Oct. 17, 2017). As relevant here, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another.*" 15 U.S.C. § 1692a(6). "'A creditor, on the other hand, is a person [or entity] to whom the debt is owed, and when a creditor collects its debt for its own account, it is not generally acting as a debt collector.'" *Dixon v. Mazda Fin. Servs., Inc.*, No. 4:21-cv-03716, 2022 WL 2479908, at *2 (S.D. Tex. July 6, 2022) (quoting *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135-36 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017) (alterations in original)). "Thus, the material distinction between a debt collector and a creditor under the FDCPA is whether the collection activity is for itself (a creditor) or for others (a debt collector)." *James v. Ally Bank*, No. 4:21-CV-00925-SDJ-CAN, 2023 WL 1093891, at *3 (E.D. Tex. Jan. 3, 2023).

In this case, Plaintiff does not allege in his Amended Complaint that Defendant is a "debt collector" as defined by the FDCPA. (*See generally* Pl.'s Am. Compl.) Instead, Plaintiff claims that "Defendant ADL Auto Sales LLC is a Texas limited liability company engaged in the business of retail automobile sales and financing." (Pl.'s Am. Compl. at 2.) Moreover, Plaintiff's

allegations regarding any alleged debt collection activities by Defendant arose out of Defendant's attempt to collect on a debt that it owns. *See, e.g.*, *Blount v. CarMax Auto Fin.*, No. 20-582-SDD-RLB, 2021 WL 2878569, at \*3 (M.D. La. June 9, 2021) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.") (internal quotation marks and citations omitted). "Accordingly, creditors, like [ADL Auto Sales], who collect debts in their own name, are not subject to the FDCPA since they are not acting as a debt collector." *Dixon*, 2022 WL 2479908, at \* 2. Thus, the Court **FINDS and CONCLUDES** that Defendant has failed to state a claim under the FDCPA and such claim against Defendant should be **DISMISSED WITH PREJUDICE**. Consequently, the Court **RECOMMENDS** that Defendant's Motion to Dismiss on this claim be **GRANTED**.

### C. Remaining State-Law Claims and Counterclaim

As the Court is recommending dismissal of Plaintiffs' federal claims under the TILA and the FDCPA, the next issue is whether it should exercise supplemental jurisdiction over Plaintiff's remaining state-law claims for (1) violations of the Texas Deceptive Trade Practices Act ("Texas DTPA"); (2) identity theft and fraud; (3) breach of peace and unlawful repossession; and (4) unjust enrichment and Defendant's counterclaim for breach of contract. The "'general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal law claims are eliminated before trial, but this rule is neither mandatory nor absolute.'" *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir.

2016) (internal quotation marks and citations omitted).  Courts should consider the factors set forth in 28 U.S.C. § 1367 and "the common law factors of judicial economy, convenience, fairness, and comity."  *Brookshire Bros. Holding, Inc.*, 554 F.3d at 601-02.

After reviewing all the factors, the Court **FINDS and CONCLUDES** that it should decline to exercise supplemental jurisdiction over any remaining claims, as is the general rule.  *See* 28 U.S.C. §§ 1367(c)(2), (3).  The Court notes that judicial economy and convenience favor declining supplemental jurisdiction because the lawsuit is still in its relatively early stages, no trial has been set, there is nothing to indicate that either party would be prejudiced by dismissing the case, and comity weighs in favor of declining supplemental jurisdiction.  *See Wells v. Lottery.com*, *Inc.*, No. 1:23-CV-1081-RP, 2024 WL 5036624, at *5 (W.D. Tex. Nov. 15, 2024), *rep. and rec. adopted*, 2025 WL 300618 (W.D. Tex. Jan. 24, 2025), *aff'd* 2025 WL 2265447 (5th Cir. Aug. 6, 2025) ("Federal court often are not as well equipped for determinations of state law as are state courts[.]") (internal quotation marks and citations omitted). Thus, the Court **RECOMMENDS** that Plaintiffs' state-law claims for violations of the Texas DTPA,[12] identify theft and fraud, breach of peace and unlawful repossession; and unjust enrichment[13] and Defendant's counterclaim for breach of contract[14] be **DISMISSED WITHOUT PREJUDICE**.[15]

---

[12] *See Wilson v. Behr Paint*, No. 3:18-cv-3130-B-BK, 2019 WL 3326246, at *4 (N.D. Tex. June 28, 2019), *rep. and rec. adopted*, 2019 WL 3322199 (N.D. Tex. July 23, 2019) (declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, including Plaintiff's claim for violation of the Texas DTPA).

[13] *See Wells*, 2024 WL 5036624, at *4 (declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, including Plaintiff's claim for fraud and unjust enrichment).

[14] *Hinkley v. Envoy Air, Inc.*, No. 4:19-CV-389-A, 2019 WL 2717068, at *5 (N.D. Tex. June 28, 2019) ("Because there is also pending the counterclaim of defendant for breach of contract and the court has determined that the only federal law claim asserted should be dismissed, the court is declining to exercise supplemental jurisdiction over the remaining state law claims.").

[15] In addition, to the extent Plaintiff requests leave to have another opportunity to amend his complaint, the Court declines such request as Plaintiff has already amended his complaint, Plaintiff has clearly pled his best case, and any other amendment would be futile.  *See*, *e.g.*, *Ayers v. Johnson*, 247 F. App'x 534, 535-36 (5th Cir. 2007); *see also* Plaintiff's Brief in Support of Plaintiff's Motion for Leave to File Surreply [doc. 46-1] at 1.)

14

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss [doc. 39] be **PARTIALLY GRANTED** as to Plaintiff's claims under the TILA and FDCPA and that such claims be **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that Defendant's Motion to Dismiss [doc. 39] as to all other claims be **PARTIALLY DENIED** and that the Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims against Defendant and Defendant's counterclaim for breach of contract against Plaintiff.  It is further **RECOMMENDED** that these claims be **DISMISSED WITHOUT PREJUDICE**.

It is further **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction [doc. 13] be **DENIED** as Plaintiff has, at the very least, failed to show  a substantial likelihood of success on the merits as to his claims pursuant to the TILA and the FDCPA.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions

15

accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 4, 2026,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 20, 2026.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

16